**IN THE COURT OF APPEALS OF IOWA**

No. 22-1918
Filed July 26, 2023

**IN THE INTEREST OF E.C.,**
**Minor Child,**

**A.C., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Des Moines County, Emily Dean, District Associate Judge.


A mother appeals the termination of her parental rights. **AFFIRMED.**


Patrick C. Brau of Brau Law Office, Mt. Pleasant, for appellant mother.

Brenna Bird, Attorney General, and Ellen Ramsey-Kacena (until withdrawal), Mary A. Triick (until withdrawal), and Mackenzie Moran, Assistant Attorneys General, for appellee State.

Heidi D. Van Winkle of the Van Winkle Law Office, Burlington, attorney and guardian ad litem for minor child.


Considered by Greer, P.J., and Schumacher and Badding, JJ.

**BADDING, Judge.**

A mother appeals the termination of her parental rights to her infant child under Iowa Code section 232.116(1)(h) (2022).[1] We interpret her petition on appeal to include arguments that termination is not in the child's best interests and that she should have been given more time to work toward reunification.[2] We review these claims de novo. *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).

When this child was born in February 2022, the mother was already receiving services from the Iowa Department of Health and Human Services for her two older children with a different father. Those children had been adjudicated as children in need of assistance the year before and removed from the mother's custody due to her substance-abuse, mental-health, and anger issues. Because the mother was unable to resolve those issues, termination petitions were filed for the older children, and the child in this appeal was removed from the mother's

---

[1] The child's father was granted additional time to work toward reunification because he was identified through paternity testing just before the permanency hearing.

[2] The mother's petition contains one issue heading: "The Court erred in finding that the Mother's rights should be terminated pursuant to Iowa Code Section 232.116(2)." But in the body of her argument, in addition to the more fully developed claims identified above, the mother mentions, "The State has failed to prove by clear and convincing evidence that [the child] cannot be returned to [the mother] without subjecting him to adjudicatory harms described in Section 232.96A." While this seems to call the statutory ground for termination into question, "[a] broad, all encompassing argument is insufficient to identify error in cases of de novo review." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000); *accord* Iowa Rs. App. P. 6.201(1)(d) (stating the petition on appeal shall substantially comply with Form 5 in rule 6.1401); .1401–Form 5 ("State the legal issues presented for appeal. . . ."). Even if we addressed the merits of this passing claim, we would summarily affirm on that ground given the mother's failure to address her substance-abuse and mental-health issues, as detailed below.

custody the day after he was born.[3] He was later adjudicated as a child in need of assistance.

At first, the mother showed promise. She attended substance-abuse treatment, participated in therapy, tested negative for illegal drugs, and had good visits with the child. Based on these positive steps, the department considered moving forward with semi-supervised visits. But things changed quickly. In May and then twice in June, the mother tested positive for methamphetamine through sweat-patch testing. In August, the State filed its termination petition based on these positive tests and the mother's inability to stabilize her mental health. Later that same month, the mother was unsuccessfully discharged from her alcohol and drug dependency services. Then, while the mother's September hair-stat test was negative for illegal substances, a contemporaneous sweat-patch test was again positive for methamphetamine.

At the October permanency hearing, the parties stipulated to a six-month extension for the recently identified father. But whether to grant the same for the mother was contested, with the department and guardian ad litem recommending termination of the mother's parental rights. The court agreed the father should be given more time "to fully embrace the services offered to him and determine if placement of the child with [him] is appropriate and in the child's best interests."

---

[3] The termination petitions for the other two children were later dismissed with the entry of bridge orders that transferred jurisdiction of custody, physical care, and visitation to the district court. *See* Iowa Code § 232.103A. According to the record, termination was not necessary for the older children due to "their father's protective capacity to make decisions regarding the children's contact with [the mother] in order to keep them safe and not be exposed to [the mother's] substance abuse."

The same was not warranted for the mother, according to the court, because of her limited progress after almost two years of services.

At the termination hearing in November, the mother testified that she intended to resume her mental-health therapy, continue her medication management, obtain a new substance-abuse evaluation, and get into inpatient treatment. She was also searching for a stable residence, having just moved into a friend's basement. When asked, "What is it that you're asking for today?" she responded by requesting six more months "so [she] can get stabilized." On cross-examination by the State, however, the mother could not explain how the future would be different from the past. Despite the serial positive drug tests, and her testimony that she was looking into inpatient treatment, the mother denied being a methamphetamine addict or using the substance in the past six months.

In its ruling, the court found the mother "continues to engage in the same behaviors that have plagued her throughout her involvement with the department and juvenile court," making "very limited gains" with her substance abuse and mental health. As a result, the court found the child could not be returned to the mother's custody, termination would be in the child's best interests, and no permissive exception to termination applied. The court did not revisit its denial of the mother's request for additional time.

Beginning with the mother's best-interests challenge on her appeal from this ruling, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child" in determining whether termination is in a child's best interests. Iowa Code § 232.116(2). The mother

does not address how these factors weigh against termination. Instead, she points to the resolution in her older two children's cases—case closure with bridge orders—and suggests the same would be possible here, avoiding the need for termination. With the child's father becoming involved so late in the proceedings, waiting for that remote possibility is not in this child's best interests. *See In re M.D.*, No. 18-1659, 2019 WL 479142, at *1 (Iowa Ct. App. Feb. 6, 2019) ("Children are not equipped with pause buttons . . . .").

So that leaves us with the statutory best-interests factors and the mother's past performance. *See C.B.*, 611 N.W.2d at 495 ("Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" (citation omitted)). Given the mother's long history of substance-abuse and mental-health issues, which she did not address during these or prior proceedings, we summarily conclude termination of her rights is in the child's best interests.

Turning to the mother's request for more time, she claims the State failed to prove the child could not be returned to her custody in six months. *See* Iowa Code § 232.104(2)(b) (allowing for additional time if "the need for removal . . . will no longer exist at the end of the additional six-month period"). But, as the State points out, "[t]he burden is not on the State to prove an extension is not appropriate." *In re K.G.*, No. 18-1187, 2019 WL 719047, at *2 (Iowa Ct. App. Feb. 20, 2019). In support of her request for an extension, the mother points to her ability "to maintain periods of sobriety" and her "efforts to get into inpatient treatment." Periods of sobriety punctuated by relapse do not support an extension.

Rather, they show an ongoing risk of adjudicatory harm.  *See In re P.D.*, No. 19-1824, 2019 WL 6894420, at *1 (Iowa Ct. App. Dec. 18, 2019).  And the record does not show the mother made any meaningful effort to engage in outpatient treatment, let alone inpatient.  While the mother now says that she understands "the need and desire for treatment to prevent future relapses," she wouldn't even admit that she had a drug problem at the termination hearing.  On this record, we conclude additional time is not warranted.

We affirm the termination of the mother's parental rights.

**AFFIRMED.**